### PILLOW v. McLEAN.

### No. 4463.

Court of Civil Appeals of Texas. Amarillo.

Feb. 3, 1936.

Rehearing Denied March 2, 1936.

See, also, 88 S.W.(2d) 702.

W. H. Russell, of Hereford, for appellant.

Cowsert & Cowsert, of Dimmitt, for appellee.

HALL, Chief Justice.

The appellee, Mrs. Rosa McLean, sued appellant, Pillow, in trespass to try title and for rents. It appears that the parties had entered into a written contract for the sale of the west half of section 8, block 0–4, in Castro county. The contract is dated January 14, 1929, is signed "Fred Pillow, Second Party; Mrs. Rosa McLean, First Party." Omitting the formal parts, the contract which is made an exhibit to the defendant's answer is as follows:

"This contract and agreement entered into on this 14th day of January, 1929, by and between Mrs. Rosa McLean of Dimmitt, Texas hereinafter called first party, and Fred Pillow of Plainview, Texas, hereinafter called second party is to witness: First party has sold and as hereinafter set out agrees to convey to second party all of the west half of Section No. 8, in Block 0–4, Castro County, Texas, containing 320 acres of land. The consideration to be paid by second party is the sum of $5,608. to be paid as follows: By the assumption and agreement to pay the sum of $312. due the State of Texas as original purchase money on the above described land, together with 3% interest thereon from and after November 1st, 1928. The balance of said consideration is to be paid in 10 payments as follows: $265. on January 14th, 1930, $315. on January 14th, 1931; $365. January 14th, 1932; $415. January 14, 1933; $465. January 14th, 1934; $515. Jany. 14, 1935; $565. Jan. 14, 1936; $615. Jan. 14, 1937; $655. Jan. 14, 1938; $715. Jan. 14, 1939, all and each of said amounts to bear interest from this date at the rate of 6% per annum, the interest to be paid annually and are payable to first party at the First State Bank of Dimmitt, Texas, and the further sum of $708. to be paid upon the execution of this contract.

"Second party agreed that within one year from this date he will place in cultivation not less than 100 acres of the above land, and will erect sufficient improvements on said land to meet the loan requirements of the Federal Land Bank of Houston, Texas.

"First party agrees that within one year from this date or when the above described improvements and placing of said land in cultivation, she will apply for a Federal

loan on said land for the full amount payable, and after the payment of the said $312. herein assumed by second party, and all costs of securing said loan shall be paid out of the proceeds of said loan, the excess net proceeds of said loan, if any, shall be divided in 10 equal parts, and one of such parts shall be credited to each of the above payments herein contracted to be made.

"Upon the payment of the fifth payment as above set out First Party agrees to execute and deliver to second party a warranty deed conveying· said land to second party, subject to any loan that may be placed against said land as herein above provided and second party agrees at the same time to execute second vendor's lien notes, additionally secured by deed of trust, for the remaining payment not made. Second party agrees to pay taxes on said land for 1929 and thereafter.

"Second party specifically agrees that upon default in the payments as above set out, or any installment of interest due thereon, he will forfeit all improvements of any kind and character he may have placed on said land to first party as liquidated damages, and in such event this contract shall become null and void and of no further force or effect. First party agrees to accept payment of the above payments herein contracted to be made by second party at any time before maturity."

The defendant alleged that he had complied with all the terms and conditions of said contract and discharged all the obligations resting upon him; that he had made payment of $708, had put 260 acres of the land in cultivation, placed permanent and valuable improvements thereon within the time stipulated in said contract, and the improvements which are itemized are stated to be of the value of $4,068.80, in addition to which he had paid taxes for the years 1929 and 1930 in the sum of $120, and had a wheat crop then growing upon the land (in the fall of 1934)· of the value of $300.

He further alleges that, notwithstanding the plaintiff agreed to make application for and obtain a loan from the Federal Land Bank, she wholly breached said term of said contract by failing to make any application or to secure a loan as she was legally bound to do.

By his cross-action he seeks to recover the above amounts as damages, alleged to have resulted to him by reason of the plaintiff's breach of said contract. He admits that plaintiff owns the legal title and is entitled to the possession of the land, but prays that he have judgment for the sums of money he has paid out, including the value of the improvements, taxes, together with interest thereon.

By supplemental petition, plaintiff excepted generally and specially to the defendant's cross-action upon the ground that, if plaintiff had breached the contract, such breach occurred on the 14th day of January, 1930, one year after the execution of the contract, which provided that she should secure the loan within one year, and that more than four years have elapsed since said date, by reason of which the defendant's cross-action for damages was barred.

The court sustained the exceptions. Defendant declined to amend, and judgment was rendered for plaintiff; hence this appeal.

It appears that, after defendant's cross-action had become barred by the statute of limitation (Vernon's Ann.Civ.St. art. 5527), he continued to occupy the premises, made several payments in the way of taxes and purchase money, but no agreement was shown under which he was permitted to hold possession. Defendant does not allege that plaintiff has been guilty of any fraud, and we conclude that the court did not err in sustaining the special exception, raising the defense of limitation.

It is expressly stipulated that, if the defendant makes default in any of the payments or any installment of interest, he will forfeit all improvements of any kind and character he may have placed on said land to the first party as liquidated damages, and that in such event the contract shall become null and void and of no further force and effect. The parties were at liberty to make such an agreement. No effort is made to set it aside or show why the court should not enforce the contract as written.

While strong equities exist in favor of the defendant, he cannot, by reason of his delay in asserting them, defeat the plaintiff's recovery of the land or reimburse himself for expenditures which he has made. It is said in 17 R.C.L. p. 688, § 33: "The general principle recognized today for the construction of statutes of limitation is that unless some ground can be

found in the statute for restraining or enlarging the meaning of its general words, they must receive a general construction, and that the courts cannot arbitrarily subtract from or add thereto, and cannot create an exception where none exists, even when the exception would be an equitable one. The statute of limitations is considered as intended to embrace all causes of action not specially excepted from its operation, and it should not be so construed as to defeat that object."

The text is quoted with approval in Texas & P. R. Co. v. Ward County Irrigation Dist. No. 1 (Tex.Civ.App.) 257 S.W. 333; 2 Wood on Limitations, § 252; Tynan v. Walker, 35 Cal. 634, 95 Am.Dec. 152; Barnes v. Glide, 117 Cal. 1, 48 P. 804, 59 Am.St.Rep. 153; Bank of Alabama v. Dalton, 9 How. 522, 13 L.Ed. 242.

We think the court correctly sustained the exception, and the judgment is affirmed.