**Lajuan and Billy WOOD,**
**Plaintiffs-Appellees,**

v.

**HUSTLER MAGAZINE, INC.,**
**Defendant-Appellant.**

No. 83–2280.

United States Court of Appeals,
Fifth Circuit.

July 23, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 11, 1984.

Before GOLDBERG, RUBIN and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Hustler Magazine invaded LaJuan Wood's privacy by publishing a stolen photograph, depicting LaJuan in the nude, that was submitted with a forged consent form. Although Texas courts have begun to flesh out the contours of the privacy cause first recognized in *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973), they have not resolved issues critical to our disposition of this diversity case. We must determine the applicable statute of limitations for privacy actions as well as the level of fault required to impose liability for actual damages on a publisher who places a private figure in a false light. The case was tried to the bench. The district court held that the cause was not barred by limitations, that Hustler invaded the Woods' privacy by publishing the photograph without adequately verifying the truth of the consent form, and that she and her husband Billy were damaged in the amounts of $150,000 and $25,000, respectively. We affirm the judgment for LaJuan, but reverse the judgment for her husband.

## I. Facts

LaJuan and Billy Wood went camping in a state park. While walking alone in a wilderness area, they became hot, disrobed, and went swimming in a river. Later they took several photos of each other in the nude. After returning home, Billy submitted the roll of film to an establishment that employed a mechanical developing process. They treated the photographs as private material, not showing them to anyone else and keeping them out of view in a drawer in their bedroom. One day, Steve Simpson, who resided in the other side of the Woods' duplex, broke into the Woods' home and stole some of the photos. Simpson and Kelley Rhoades, who was then his wife, decided to submit a nude photo of LaJuan to Hustler for publication in its "Beaver Hunt" section. Accordingly, they

Graves, Dougherty, Hearon & Moody, David H. Donaldson, Jr., Austin, Tex., for defendant-appellant.

Fisher, Roch & Gallagher, Ronald Wardell, Houston, Tex., for plaintiffs-appellees.

filled out a consent form that requested personal information. Some of the information was true, such as LaJuan's identity and her hobby of collecting arrowheads. Other information was false, such as LaJuan's age and address and a fantasy of being "tied down and screwed by two bikers." Kelley forged LaJuan's signature and they mailed the photograph and consent form to Hustler in California.

Hustler's "Beaver Hunt" section featured nude photographs, typically sent in by Hustler readers, of nonprofessional female "models." If a submitted photo was selected for publication, the model would receive a $50 fee. Although Hustler had maintained its "Beaver Hunt" section for some time, it did not have a written policy or procedure for verifying the accuracy of information and signatures contained in the consent forms when a photograph was to be published. Hustler's informal policy, however, was to call the telephone number listed in the consent form and ask whomever claimed to be the model nonleading questions designed to elicit responses that would confirm information in the consent form. If no telephone number was listed, Hustler would send a mailgram or telegram to the address shown for the model, requesting that Hustler be called collect. If either the consent form itself or the responses during verification caused Hustler to become suspicious, or if the model had developed doubts about appearing nude in print, Hustler was supposed to place the model's entry into a "Never to Run" category.

When the Hustler staff considered LaJuan's photo for publication, some employees thought that the name, "LaJuan Wood" was a play on words. In the photograph LaJuan was sitting on a horizontal portion of a tree trunk, creating the impression that "LaJuan Wood" was an alteration of "Lay You on Wood." "LaJuan"'s consent form did not list a telephone number, but provided that the $50 check be sent in Kelley's name to LaJuan's purported address. After Hustler selected LaJuan's photo, Kelley received a mailgram addressed to LaJuan and called Hustler. A

Hustler staff member asked Kelley a series of leading questions, answerable by "yes" or "no," in a conversation that lasted only one or two minutes.

Hustler published LaJuan's photo in the February 1980 issue of Hustler with the caption, "Photo by Husband." The accompanying copy read, "Lajuan Wood is a 22-year old housewife and mother from Bryan, Texas, whose hobby is collecting arrowheads. Her fantasy is 'to be screwed by two bikers.'" Two other photos were on the same page against a background that resembled a bathroom-tile floor. The tip of a bare left foot appeared at the bottom of the page.

LaJuan and Billy first learned of the publication from friends. Although LaJuan initially did not believe that a photo of her had been published, the Woods confirmed the publication by obtaining a copy of the magazine. LaJuan suffered mental anguish and humiliation after learning of the inclusion of her photo in Hustler. She received a series of obscene telephone calls after the magazine appeared. To help her in dealing with her feelings of degradation and embarrassment, LaJuan required psychological counseling, which extended over a six-week period.

LaJuan and Billy sued Hustler for defamation and for invasion of privacy on two theories—publication depicting the subject in a false light highly offensive to a reasonable person and public disclosure of private facts not of legitimate public concern and highly offensive to a reasonable person. The district court determined that the law of Texas, not California, applied. Although the Woods' defamation cause was time-barred by article 5524, Tex.Rev.Civ.Stat. Ann. (Vernon 1958) (one year), the district court held that the privacy causes was governed by the two-year limitations period of article 5526. Holding that Hustler had invaded the Woods' privacy both by publicly disclosing private facts in an offensive manner and by placing them in an offensive false light, the court awarded $150,000 in compensatory damages to LaJuan and

$25,000 in compensatory damages to Billy. The court found that Hustler invaded Billy's privacy less intrusively and that some of his anguish was attributable to the invasion of his wife's privacy. Texas does not recognize a relational or derivative right of privacy. *See Moore v. Charles B. Pierce Film Enterprises, Inc.*, 589 S.W.2d 489 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.).

## II. Choice of Law

Hustler argues that California substantive law applies to this case. *See, e.g., Briscoe v. Reader's Digest Ass'n*, 4 Cal.3d 529, 93 Cal.Rptr. 866, 483 P.2d 34 (1971) (en banc). The principal reason that Hustler urges application of California law is its shorter, one-year statute of limitations that applies to invasion of privacy actions. *See* Cal.Civ.Proc.Code § 340(3) (West 1982 & Supp.1984). Hustler assumes that California's governing statute of limitations is substantive and that Texas would be required to apply California's limitations period if California had the most significant relationship to the parties and the dispute.

■ Sitting in diversity, we follow the conflict-of-law rules of Texas, the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979), the Texas Supreme Court adopted the "most significant relationship" test of the Restatement (Second) Conflict of Laws (1969). Section 6 of the Restatement recites general principles, and section 145 lists the contacts to be considered in applying section 6 to evaluate the significance of the relationship of a state's law to the parties, the issue, and the occurrence, ultimately to decide which law to apply.

■ The district court properly applied Texas law. Under section 145 of the Restatement, the contacts of Texas predominate: the injury occurred in Texas, the relationship of the parties was centered in Texas, and the plaintiffs' residence was in Texas. "In situations involving the multistate publication of matter that ... invades

his right of privacy (see § 153), the place of the plaintiff's domicil ... is the single most important contact for determining the state of the applicable law." Restatement (Second) Conflict of Laws § 145 comment f (1969). The only contacts pointing to California are the defendant's place of business and the place where the conduct causing injury occurred. Because Texas has the most significant relationship to this litigation, Texas substantive law applies. We need not address whether California's statute of limitations is substantive or procedural. Texas courts, applying Texas substantive law, would clearly apply a Texas limitations period. *See Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1111–12 (5th Cir.1981).

## III. Statute of Limitations

■ Hustler contends that article 5524(1), Tex.Rev.Civ.Stat.Ann. (Vernon 1958), which provides a one-year limitations period for actions "for injuries done to the character or reputation of another by libel or slander," applies to invasion of privacy causes of action. The district court applied the two-year statute of limitations of article 5526(3), Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1984), which governs actions "for injury done to the person of another." The Woods filed suit approximately a year and two weeks after the February 1980 issue of Hustler was published. If the district court erred by applying article 5526, the Woods would be barred from obtaining a remedy, and we would reverse. We hold, however, that the district court properly applied the two-year limitations period of article 5526 to privacy causes.

In the relatively short time since Texas recognized a cause of action for invasion of privacy, Texas courts have not had occasion to decide which limitations period applies. *See generally*, Comment, *The Privacy Action in Texas: Its Characterization, and a Determination of Applicable Statutes of Limitations*, 29 Sw.L.J. 928 (1975). Thus, we must predict how Texas courts would resolve the issue.

Dean Prosser formulated the four distinct torts encompassed under the category of invasion of the right of privacy. *See* W. Prosser, *Handbook of the Law of Torts* § 117 at 802–18 (4th ed. 1971); Prosser, *Privacy*, 48 Calif.L.Rev. 383 (1960). The American Law Institute later adopted these four types of privacy invasions in the Restatement (Second) of Torts. *See* Restatement (Second) of Torts §§ 652A, 652B, 652C, 652D & 652E (1976). Texas courts recognize these four forms of privacy invasion. *See Braun v. Flynt*, 726 F.2d 245, 252 (5th Cir.1984); *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 682 (Tex.1976); *Gill v. Snow*, 644 S.W.2d 222, 223–24 (Tex. App.—Ft. Worth 1982, no writ). Each of the four, distinct privacy torts is based on different elements. They are related because "each involves interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others." Restatement (Second) of Torts § 652A comment b (1976).

Hustler urges that we apply the one-year statute of limitations governing defamation actions to bar the Woods' remedy, primarily because of the similarity of a "false light" privacy action to defamation. We acknowledge the kinship of defamation to a false light claim, but we see them as distinct torts involving different injuries. Although Hustler's publication of LaJuan's photograph with the accompanying copy was actionable under either a defamation or a false light theory, the false light tort is broader than defamation. In his seminal law review article, Dean Prosser described the interest invaded by placing plaintiff in a false light as "that of reputation, with the same overtones of mental distress as in defamation." Prosser, *supra*, 48 Calif.L. Rev. at 400. Nevertheless, we have recently noted that different interests are invaded by the two torts, despite the similarities of false light invasion of privacy to defamation. *See Braun v. Flynt*, 726 F.2d 245, 250 (5th Cir.1984) (applying Texas law). "[T]he principal element of injury in a defamation action is impairment of reputation,

while an invasion of privacy claim is founded on mental anguish ...." *Id.; see Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir.1983). The statute of limitations governing defamation is expressly limited to those actions to remedy "injuries done to the *character* or *reputation* of another" (emphasis added).

Speaking generally of injury caused by the invasion of privacy, the Texas Supreme Court has described it as mental suffering and mental and subjective injury. *Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973). *See National Bonding Agency v. Demeson*, 648 S.W.2d 748, 750 (Tex.App.— Dallas 1983, no writ). Moreover, the *Billings* court quoted a description of the invasion as an "encroachment upon the personality of the individual." *Billings*, 489 S.W.2d at 860. The court also stressed the separate nature of the privacy tort. "The right of privacy is a right distinctive in itself and not incidental to some other recognized right for breach of which an action for damages will lie." *Id.* at 861.

The privacy tort of public disclosure of highly offensive private facts more clearly invades personality than reputation. "[W]hat is involved in a privacy case is not damage to reputation but primarily emotional disturbance." Wade, *The Communicative Torts and the First Amendment*, 48 Miss.L.J. 671, 707–08 (1977); *see* Nimmer, *The Right to Speak from* Times *to* Time: *First Amendment Theory Applied to Libel and Misapplied to Privacy*, 56 Calif.L.Rev. 935, 958 (1968).

We do not think that the Texas Supreme Court would apply a one-year limitations period to a false light privacy action, while applying a two-year period to the tort of publicizing private facts, which more clearly does not substantially involve damage to reputation or character. Rather, we think that, in the absence of direction by the Texas legislature, Texas courts would apply the two-year limitations period of article 5526 to both privacy torts because they involve injury to the person. We are aided by *Whitley v. Whitley*, 436 S.W.2d 607 (Tex.Civ.App.—Houston [14th District]

1968, no writ), where an action for alienation of affections was held to be governed by article 5526. The court noted that article 5526 had been applied to other actions for mental suffering, anguish, and sorrow and affliction. Because the loss of consortium involved losses "of a mental and emotional nature," the court held that they were "embraced within the term 'injury done to the person of another.'" *Id.* at 609. Likewise, the injuries caused by Hustler's publication of LaJuan's nude photo are of a mental and emotional nature.

We also note that Texas courts construe statutes of limitations strictly, requiring that an action be specifically excepted in order to avoid application of the general statute of limitations. *See Robin v. Ely & Walker Dry Goods Co.,* 137 S.W.2d 164, 167 (Tex.Civ.App.—Austin 1940, writ ref'd n.r.e.); *Pillow v. McLean,* 91 S.W.2d 898, 899–90 (Tex.Civ.App.—Amarillo 1936) ("statute of limitations is considered as intended to embrace all causes of action not specially excepted from its operation"), *aff'd,* 131 Tex. 539, 117 S.W.2d 57 (1938); Comment, *supra,* 29 Sw.L.J. at 940, 947–48. Therefore, we hold that the Woods' privacy claims are governed by the general two-year statute of limitations applicable to actions for injury to the person, and are not time-barred.

## IV. Hustler's Liability for Placing LaJuan in a False Light

In this appeal we are concerned with the two forms of privacy invasion that share the element of publicity—false light and disclosure of private facts. *See* Restatement (Second) of Torts § 652A comment d & illustration (1976). Hustler's primary challenge to its liability focuses on the standard of care. Hustler argues that the First Amendment requires, at a minimum, that a publisher must act in reckless disregard of the falsity and the offensiveness of material before it can be liable for invasion of privacy by placing an individual in a false light. Hustler claims that it did not publish in reckless disregard, because it did not know of or did not have serious doubts about the falsity of the consent form.

The district court, guided by language in *Gill v. Snow,* 644 S.W.2d 222 (Tex.App.—Ft. Worth 1982, no writ), assumed that publishing with reckless disregard was a required element of a false light claim and found that Hustler acted in reckless disregard of the falsity of the published material and of the false light in which LaJuan would be placed. Noting that no Texas court had established a standard of care for a private facts case, the district court did not address the question because it found that Hustler published the photo of LaJuan with reckless disregard for her right to be free from publication of a matter that would be highly offensive to a reasonable person. The district court found that Hustler was liable for invasion of LaJuan's privacy under either theory. Under the false light theory, Hustler's publication falsely represented that LaJuan consented to the submission and publication in a coarse and sex-centered magazine of a photograph depicting her in the nude. Moreover, the publication falsely attributed a lewd fantasy to LaJuan. Under public disclosure of private facts, Hustler gave publicity to the highly private fact of LaJuan's nude appearance, the publication of which, absent her consent, would be highly offensive to a reasonable person and was not of legitimate public concern.

█ The fault under each theory was Hustler's publication without LaJuan's consent. The central inquiry concerning Hustler's liability focuses on its procedure for verifying the truth of consent forms submitted with photographs for publication in the Beaver Hunt section.[1] Although the district court did not specifically link LaJuan's recovery to one of the two privacy

---

1. If LaJuan had truly consented to the publication and submitted personal information on the consent form, she would not have been placed in an offensive false light nor would publicity have been given to her private life in an offensive manner. Hustler would have an absolute privilege because of her consent. *See* Restatement (Second) of Torts § 652F comment b (1976).

causes, we infer that she recovered on the false light theory because some of her damages resulted from publication of the false and highly offensive fantasy.[2] This component of damages could not have been awarded under the private facts theory because the fantasy did not truthfully reflect LaJuan's private life. *See* Restatement (Second) of Torts § 652D & comments a & b (1976); *id.* § 652E comment b (1976). Therefore, we address the standard of care applicable to a media defendant who invades a private figure's privacy by placing that person in a false light. Hustler does not dispute that LaJuan was and remains a private figure.

### A. Standard of Care

The Supreme Court first enunciated the actual malice standard in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a defamation case. The Court held that, to comply with the First and Fourteenth Amendments, states could not impose liability on a defendant who published defamatory matter concerning a public official unless the publisher knew of the falsity of the matter or acted in reckless disregard for its truth or falsity. The Court later applied the prevailing constitutional standard to false light privacy actions in *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). The Court noted that it applied the *New York Times* actual malice requirement in the discrete context of a statutory privacy action brought by a private individual who was involved in a matter of public interest. In a divided opinion, the Court later required private figures in defamation actions to prove actual malice if the published material was a matter of public or general concern. *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

The Court substantially altered the direction of First Amendment law in *Gertz v.*

*Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). *See generally,* Wade, *The Communicative Torts and the First Amendment*, 48 Miss.L.J. 671, 692–97 (1977); Robertson, *Defamation and the First Amendment: In Praise of Gertz v. Robert Welch, Inc.*, 54 Tex.L.Rev. 199 (1976). Abandoning *Rosenbloom*'s focus on whether defamatory matter was a matter of public concern, the *Gertz* Court established a public figure-private figure dichotomy. *See Braun v. Flynt*, 726 F.2d at 249 & n. 6. Defendants who published statements concerning public figures were entitled to heightened protection because (1) the press required "breathing space" in conveying information about public figures; (2) public figures could be said, in some sense, to have sought out or volunteered for notoriety or public discussion, and (3) public figures had access to media in which they could respond to and attempt to correct false statements. By contrast, the states had a greater interest in protecting private figures who had not "invite[d] attention and comment" and who generally "lack effective opportunities for rebuttal." *Id.* at 344, 94 S.Ct. 3009. The Court held that, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Id.* at 347, 94 S.Ct. at 3010. After *Gertz*, states were permitted to establish negligence as a standard of care in defamation actions by private plaintiffs so long as the recovery was limited to actual damages. To recover punitive damages, however, private plaintiffs were required to satisfy the *New York Times* actual malice standard. Most state courts considering the question in the wake of *Gertz* adopted negligence as the minimum standard of liability required by the Constitution for defamation actions by private plaintiffs. *See Foster v. Laredo Newspapers, Inc.,*

---

**2.** A plaintiff whose privacy has been invaded can have only one recovery if alternative causes of action contain identical elements of damages flowing from the same publication. *See Braun v. Flynt*, 726 F.2d 245, 250–51 (5th Cir.1984);

*Holloway v. Butler*, 662 S.W.2d 688, 690 (Tex. App.—Houston [14th District] 1983, writ ref'd n.r.e.) (adopting Uniform Single Publication Act); Restatement (Second) of Torts § 652A comment d & illustration (1976).

541 S.W.2d 809, 819 (Tex.1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977); *Mathis v. Philadelphia Newspapers, Inc.*, 455 F.Supp. 406, 412 n. 2 (E.D.Pa.1978); Wade, *supra*, 48 Miss.L.J. at 706.

### B. Texas Law

In *Foster*, the Texas Supreme Court held that

> a private individual may recover damages from a publisher or broadcaster of a defamatory falsehood as compensation for actual injury upon a showing that the publisher or broadcaster knew or should have known that the defamatory statement was false.

*Foster*, 541 S.W.2d at 819. The court also noted that, as a predicate for liability, the content of the false statement must "warn a reasonably prudent editor or broadcaster of its defamatory potential." *Id.* at 819–20 (quoting *Gertz*, 418 U.S. at 348, 94 S.Ct. at 3011).

No Texas court has set forth the standard of care applicable to publishers who invade the privacy of a person, public or private, by placing him in a false light.[3] Therefore, *Erie* requires us to make our own conclusion as to the standard of care that the Texas Supreme Court would require to hold a publisher liable for placing a private plaintiff in a false light. *See Bryan v. Kershaw*, 366 F.2d 497, 500–01 (5th Cir.1966), *cert. denied*, 386 U.S. 959, 87 S.Ct. 1030, 18 L.Ed.2d 108 (1967); 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507 (1982). Texas intermediate appellate courts have indicated that they would generally follow the guidelines of the Restatement (Second) of Torts. *See Gill*, 644 S.W.2d at 224; *Moore v. Charles B. Pierce Film Enter-*

*prises, Inc.*, 589 S.W.2d 489 (Tex.Civ.App. —Texarkana 1979, writ ref'd n.r.e.). On the particular issue of standard of care under false light, however, the Restatement qualifies its actual malice standard with a caveat. *See* Restatement (Second) of Torts § 652E caveat & comment d (1976). Comment d notes that, in view of *Gertz*, the caveat leaves open the possibility that liability may be based on a showing of negligence as to truth or falsity: "If Time v. Hill is modified along the lines of Gertz v. Robert Welch, then the reckless-disregard rule would apparently apply if the plaintiff is a public official or public figure and the negligence rule will apply to other plaintiffs." Restatement (Second) of Torts § 652E comment d at 399.

We are convinced that a Texas court would apply no different standard of care to a false light claim than it would to a defamation action. We note that the principal justification in *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), for applying the actual malice standard to a private figure was the subject of the published material—a matter of public concern. *Gertz*, however, undermines the authority of *Hill*. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 498 n. 2, 95 S.Ct. 1029, 1048 n. 2, 43 L.Ed.2d 328 (Powell, J., concurring). Rather than asking if the publication is newsworthy or concerns a public issue to determine if the actual malice standard applies, *Gertz* requires that courts inquire into the type of damages (actual or punitive) and the type of plaintiff (private or public) involved in a case. *See Braun v. Flynt*, 726 F.2d at 249 & n. 6. Soon after *Gertz* was decided, the Court considered *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), a false light case. The Court there said, "this case presents

---

**3.** The Texas Court of Civil Appeals affirmed a judgment based on invasion of privacy in *National Bonding Agency v. Demeson*, 648 S.W.2d 748 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). The court, however, did not distinguish among three possible theories—intrusion into seclusion, public disclosure of private facts, and placing in a false light, *id.* at 749 n. 2, nor did the court evaluate the applicable standard of care,

aside from noting that the jury found that the appellant had acted with malice. *Id.* at 751. In *Gill v. Snow*, 644 S.W.2d 222 (Tex.App.—Ft. Worth 1982, no writ), the court considered a false light claim, but did not rule on the applicable standard of care because "no false statements of fact were ever publicized ...." *Id.* at 224.

no occasion to consider whether a State may constitutionally apply a more relaxed standard of liability for a publisher or broadcaster of false statements injurious to a private individual under a falselight theory of invasion of privacy ...." *Id.* at 250, 95 S.Ct. at 469. The Court left the question open because no party objected to the jury instruction, which stated that a finding of actual malice was required before the publisher could be held liable. *Id.*

This circuit, however, applying Texas law in a recent false light case, helps decide the constitutional question. In *Braun v. Flynt*, 726 F.2d at 249, the court held that the defendant, who placed a private figure in a false light, was not entitled to the constitutional protection afforded publishers by application of actual malice as a standard of liability. The court went on to affirm the jury's finding of actual malice, however, because of the punitive damages in the case. *Id.* at 256–57. In light of *Braun*, we hold that *Gertz* applies equally to false light and defamation cases, and that states are permitted, consistent with the First and Fourteenth Amendments, to impose liability for actual damages on publishers who negligently place private figures in an offensive false light. Courts and commentators have agreed with this conclusion. *See Fitzgerald v. Penthouse International, Ltd.,* 525 F.Supp. 585, 602–03 (D.Md.1981) (dictum), *aff'd,* 691 F.2d 666 (4th Cir.1982); *Dresbach v. Doubleday & Co.,* 518 F.Supp. 1285, 1288–92 (D.D.C. 1981); J. Nowak, R. Rotunda & J. Young, *Constitutional Law* at 787 (1978); Wade, *supra,* 48 Miss.L.J. at 707; Hill, *Defamation and Privacy Under the First Amendment,* 76 Colum.L.Rev. 1205, 1274 & n. 321 (1976); Note, *Right of Privacy—Availability of Injunctive Relief for Invasions of Privacy,* 39 Mo.L.Rev. 647, 657 (1974).

■ We think that Texas courts would apply the negligence standard of liability

enunciated in *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819–20 (Tex. 1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977), to false light privacy actions brought by private plaintiffs seeking actual damages. Accordingly, we need not evaluate the evidence of Hustler's awareness or acts while verifying the forged consent form against the stringent, subjective standard of reckless disregard set forth in *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968),[4] and in *A.H. Belo Corp. v. Rayzor,* 644 S.W.2d 71, 84–85 (Tex.App.—Ft. Worth 1982, writ ref'd n.r.e.).

■ Under the *Foster* negligence standard the record prominently shows that Hustler carelessly administered a slipshod procedure that allowed LaJuan to be placed in a false light in the pages of Hustler Magazine. The nature of material published in the Beaver Hunt section would obviously warn a reasonably prudent editor or publisher of the potential for defamation or privacy invasion if a consent form was forged. The wanton and debauched sexual fantasies and the intimate photos of nude models were of such a nature that great care was required in verifying a model's consent.

In verifying the forged consent form sent with LaJuan's picture, Hustler did not even follow its own questionable procedure. The district court found that, during a brief telephone conversation, a Hustler research assistant merely asked a few leading questions of the same person who submitted the forged consent form. James Heinsch, who was Hustler's managing editor for the February 1980 issue, testified that verifying by asking leading questions was a breach of Hustler's verification policy. Hustler also claimed that its policy was to throw out or place in a "Never to Run" category photos and consent forms

---

**4.** The reckless disregard aspect of the *New York Times* actual malice test

is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the con-

clusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1325.

that gave rise to suspicions concerning their accuracy. The Hustler staff, however, did not question the accuracy of the name, "LaJuan Wood," even after employees suspected that it was a pseudonym. The fact that the $50 check was to be sent to a person other than LaJuan at what was alleged to be LaJuan's address also did not trigger an inquiry.

The verification procedure was deficient even when Hustler followed it. When LaJuan's photo was published, Hustler did not require the submission of a social security number or a driver's license number, from which Hustler could easily have verified its source. Nor did Hustler require notarization of the consent form. Another flaw in the verification procedure was exposed in cases where the model did not list a home telephone number. If such a model's photo was selected, the model would call Hustler after she had received a mailgram. A "model" engaged in a fraud would know that she was calling Hustler, and would be prepared to answer questions that confirmed the information she submitted. Because Hustler did not call back as an additional safeguard, the "model" could call from any undisclosed telephone number. At least when Hustler called a number listed on the form it would have an element of surprise. By asking for a model by name, Hustler would probably get that person on the phone before she knew Hustler was the caller and, in a case of fraud, before she was prepared to supply false answers. Hustler acted negligently.

Because we affirm the judgment for LaJuan on the false light theory, we need not address Hustler's liability for publicly disclosing the highly private, but truthful, fact of her nudity.

**V. Invasion of Billy's Privacy**

The district court found that Hustler invaded Billy's privacy by publishing the caption "photo by husband" along with the photo of LaJuan. The court determined that the fact that Billy took photos of his wife in the nude would be highly offensive to a reasonable person. By disclosing this

fact, the district court found that Hustler invaded Billy's privacy. The court also found that the caption placed Billy in an offensive false light because it indicated that he had taken the picture for publication in Hustler's Beaver Hunt section.

Hustler argues that Billy's privacy was not invaded because the fact that he photographed his wife in the nude was not private and that a reasonable person would not find it highly offensive. Moreover, Hustler contends that the caption was accurate and that Billy was not placed in a false light. It argues that models are the persons who typically submit photos and that it would be unreasonable to infer that the photographer submitted the photo for publication in Hustler.

We need not address these contentions because we agree with Hustler on another issue. The district court was clearly erroneous in finding that Billy suffered mental anguish for the invasion of *his* privacy. Texas does not permit a plaintiff to recover for injury caused by the invasion of another's privacy. *See Moore v. Charles B. Pierce Film Enterprises, Inc.,* 589 S.W.2d 489 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Justice v. Belo Broadcasting Corp.,* 472 F.Supp. 145 (N.D. Tex.1979); Restatement (Second) of Torts § 652I (1976). We do not doubt that Billy suffered as a result of LaJuan's injury. The record, however, shows no evidence of any mental anguish or suffering caused by any invasion of Billy's right of privacy. Indeed, Billy testified that he was not injured and that his anger stemmed from the tension and pressure created within his family as a result of the publication. Billy attributed these feelings to his concern for the effect that the publication had and would have on his wife. We therefore reverse the district court's judgment for Billy.

**VI. Damages**

Hustler argues that the $150,000 damages award to LaJuan was the result of passion and prejudice and that it exceeds the amount supported by the evidence. We

disagree. The record contains no evidence that the district court was prejudiced or awarded punitive damages in the guise of actual damages. Moreover, after examining the record, we are convinced that the award of damages is not "beyond the maximum possible award supported by the evidence ...." *Keyes v. Lauga,* 635 F.2d 330, 336 (5th Cir.1981). *See Melanson v. Turner,* 436 S.W.2d 197 (Tex.Civ.App.—Ft. Worth 1968, no writ).

AFFIRMED in part, REVERSED in part.