Ursula **ASHBY**, Plaintiff-Appellant,

v.

**HUSTLER MAGAZINE, INC.,**
Defendant-Appellee.

No. 85–5705.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1986.

Decided Oct. 2, 1986.

Rehearing Denied Nov. 24, 1986.

James E. Vonsick, Louisville, Ky., for plaintiff-appellant.

M. Stephen Pitt, Kimberly K. Greene (argued), William H. Hollander, Louisville, Ky., for defendant-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges; and PORTER, Senior District Judge.*

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Ursula Ashby (Ashby) appealed from an order of the district court granting summary judgment to defendant-appellee Hustler Magazine, Inc. (Hustler) in this diversity action alleging libel and invasion of privacy pursuant to Kentucky law.

In early December of 1980, Ashby's roommate Teresa Davis (Davis) convinced her to pose for nude photographs in their Louisville, Kentucky apartment. Using a polaroid instant camera, Davis snapped four pictures of Ashby. Ashby treated the photographs as her private property and immediately secured them inside a jewelry box in her closet.

Approximately two weeks after posing for the photographs, Ashby accompanied Davis to Indianapolis for a Christmas holiday at the home of Davis' mother. Ashby permitted her brother to use her apartment while she was away on vacation.

Ashby's brother hosted "a couple of wild parties" at the apartment. Shortly after returning from Indianapolis, Ashby discovered that several items had disappeared from her apartment, including a designer phone, a leather jacket, a ring, and some gold chains. At that time, however, Ashby did not discover that any of the nude photographs were missing.

Defendant Hustler publishes *Hustler Magazine* (the "magazine"). Each issue of the magazine contains a "Beaver Hunt"

pictorial section which features nude photographs of nonprofessional female "models". In a caption printed below each of the Beaver Hunt photographs, the magazine identifies the model's name, age, occupation, hobbies and sexual fantasies. Hustler solicits photographs for its Beaver Hunt contest via a printed model release form, published in each edition of the magazine, which states in relevant part:

> Beaver Hunters, here is the model release form you must send to us with your entry in Hustler's amateur photo contest ... Models should be shown totally nude. Faces must be visible in photos. Novelty photos will be considered.[1]

In addition, the release form requests that the contestants provide Hustler with the following information (1) the model's name, address, date of birth, and telephone number; (2) the photographer's name; (3) the model's occupation, hobbies and sexual fantasies; and (4) the name of the person to whom the fifty dollar publication prize is to be forwarded.

During February of 1981, Hustler received a model release form signed by Karen Johnson (Johnson) together with a nude photograph of Ashby.[2] The release form named Johnson as the model in the photograph, correctly listed Johnson's home address and telephone number, and directed that the fifty dollar prize be forwarded to Johnson at her listed residence. The form stated that the photograph had been taken by "Mike," that the model's birthdate was "10–17–55", that the model's hobbies were "love to have sex and swim," and that the model's sexual fantasy was "to make love to five men at one time."

On or about April 23, 1981, Hustler's Research Director, Stephanie Ross (Ross), telephoned Johnson at the number in the release form. Ross verified the information incorporated into the release form.

---

* Hon. David S. Porter, Senior United States District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. The language of this solicitation has been altered in different editions of the magazine.

2. Johnson and her boyfriend, Michael Mucker, had attended one of the parties which Ashby's brother hosted at the Louisville apartment.

According to Ross' affidavit, "Karen Johnson's responses were identical to the information on the release form (except that she corrected the birthdate listed on the release, stating that her boyfriend, Mike, had put down the wrong date)." Johnson affirmed her authorization to publish the photograph and confirmed the attendant sexual fantasy.

Thereafter, in June 1981, Hustler mailed Johnson a fifty dollar check as payment for Hustler's use of the photo. The check was endorsed by Johnson and negotiated at Citizens Fidelity Bank in Louisville on June 30, 1981.

Ashby's nude photograph was published in the September 1981 issue of *Hustler Magazine* and was accompanied by the following caption: "Twenty-five year old Karen is a housewife from Louisville, Kentucky who likes to swim. Her fantasy is to be the only girl at an orgy." One of Ashby's friends informed her that her picture had been published in the magazine and, at that point, Ashby first realized that the photograph had been stolen.

Ashby brought this action in libel and invasion of privacy against Hustler in the Circuit Court for Jefferson County, Kentucky, alleging that the publication of her nude photograph in the magazine without her consent caused her to suffer severe emotional distress with resulting physiological consequences. Hustler removed the case to federal court. The district court granted defendant's motion for summary judgment from which order Ashby timely appealed to this court.

On appeal, Ashby argued that the district court erred in granting summary judgment to defendant in the face of conflicting issues of material fact bearing upon her claims of libel and invasion of privacy. ■ The Kentucky Supreme Court has defined libel as the publication of a written,

defamatory, and unprivileged statement. A writing will be considered defamatory if, construing the matter as a whole and measuring the effect of the words on the "average lay reader," it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation. *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky.1981), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982). Under Kentucky law, a private plaintiff may recover for libel "on a showing of *simple negligence* [on behalf of the publisher], measured by what a reasonably prudent person would or would not have done under the same or similar circumstances." *Id.* at 886 (emphasis added).

■ Summary judgment is rarely appropriate in controversies governed by a negligence standard because the facts and circumstances of each case determine the degree of care by which the defendant's conduct is to be measured. *McTavish v. Chesapeake and Ohio Railroad Co.*, 485 F.2d 510, 513 (6th Cir.1973) (*quoting Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 530 (Ky.1969)). *See also Rogers v. Peabody Coal Co.*, 342 F.2d 749, 751 (6th Cir.1965). In the present case, Ashby charged that the district court erred in granting summary judgment to defendant because the record joined issues of material fact that demonstrated Hustler's negligence when it published a photograph and caption which (1) falsely represented that Ashby had given consent for the publication of her sexually-explicit photograph in a hard-core, sex-centered magazine, and (2) falsely attributed lewd sexual fantasies to her.

■ As the publisher of a magazine that is generally acknowledged to be tasteless and offensive,[3] Hustler had a duty to exer-

---

**3.** In describing *Hustler Magazine*, the court in *Faloona v. Hustler Magazine*, 607 F.Supp. 1341, 1345 (N.D.Tex.1985), stated "[t]hat magazine is tasteless; it is offensive; it is raunchy; it is filled with smut and sleaze and slime; and it is devoted primarily to sexual exploitation and dis-

paragement of women." Further commenting on the magazine's literary and artistic value, the court stated "[t]he writing style of *Hustler* is juvenile, its articles and fiction are at the level of a tabloid newspaper, and the photos of nudes in *Hustler* are much more explicit, sleazy and

cise extreme care and caution in verifying that a model had consented to the publication of her nude photograph in the magazine's Beaver Hunt section. Where, as here, Hustler's solicitation form encouraged the submission of "novelty photos," the risk of receiving a forged consent form was substantial. The potentially devastating effect of an erroneous publication on the psychological, physical, sociological and economic well-being of a person whose picture had been published in the magazine without her consent should have counseled the defendant to implement verification procedures which would ensure that the "model" featured in the Beaver Hunt pictorial had actually consented to the publication of her nude photograph in the magazine. As stated by the Fifth Circuit in a case which, like the case at bar, involved Hustler's publication of a stolen photograph in the Beaver Hunt section of the magazine:

> The nature of material published in the Beaver Hunt section would obviously warn a reasonably prudent editor or publisher of the potential for defamation or privacy invasion if a consent form was forged. The wanton and debauched sexual fantasies and the intimate photos of nude models were of such a nature that great care was required in verifying a model's consent.

*Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1092 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985).

In *Wood, supra,* the Fifth Circuit upheld a $150,000 damage award that had been entered pursuant to a district court finding that Hustler had acted negligently in publishing a plaintiff's nude photograph and alleged sexual fantasy in the Beaver Hunt section of the February 1980 edition of the magazine. The appellate court concluded that, on the facts of that case, Hustler was negligent because it (1) published the photograph after being put on reasonable inquiry as to whether the information contained in the consent form was accurate, and (2) failed to implement adequate verification procedures and safeguards designed to ensure that the model consented to the publication.[4]

In the present case, the record disclosed discrepancies in Johnson's responses to Ross' telephone inquiries which should have alerted Hustler to proceed with extreme care. Although Johnson had identified herself as a "housewife" on the model release form, she informed Ross that her "boyfriend" Mike had taken the photograph and that her "boyfriend" Mike had incorrectly listed her birthdate on the release form.

Moreover, the entire verification procedure implemented by Hustler was questionable when measured against the degree of care that should be imposed upon publishers of sexually-explicit materials. Hustler's verification procedures were not, in any way, calculated to ensure that the person who had mailed the photograph and executed the release form was indeed the individual depicted in the sexually explicit

---

sadistic than those in *Playboy* or *Penthouse.*" *Id.* at 1344, n. 9.

4. In *Wood,* the plaintiff LaJuan Wood brought an action against Hustler after her nude photograph was published in *Hustler Magazine* without her consent. The record disclosed that Wood's neighbors broke into her home and stole a nude photograph of her that had been hidden in her dresser drawer. Thereafter, the neighbors completed a consent form which correctly stated Wood's name and accurately reported Wood's hobby of collecting arrowheads. However, the consent form falsely stated both Wood's age and address and falsely attributed to Wood the fantasy of being "tied down and

screwed by two bikers." The consent form did not list a telephone number and requested that the $50.00 check be drafted in favor of Wood's neighbor, but mailed to Wood's purported address.

The Fifth Circuit determined that a negligence standard of liability governed a false light invasion of privacy action under Texas law and affirmed the district court's judgment, finding that Hustler employees had reasonable cause to believe that the consent form had been forged and that Hustler's verification procedures were flawed because they did not provide adequate safeguards to prevent the publication of a stolen photograph.

photograph. *Cf., Wood,* 736 F.2d at 1093. Accordingly, this court concludes that the judgment of the district court must be reversed insofar as it granted summary judgment to defendant on the plaintiff's libel claim.

Ashby's invasion of privacy cause of action was predicated upon a "false light" invasion of privacy theory which required Ashby to demonstrate by clear and convincing evidence that Hustler acted with actual malice when it published her nude photograph in the September 1981 edition of the magazine. As stated by the Kentucky Supreme Court:

> The two basic requirements to sustain such an action are (1) the false light in which the other was placed would be highly offensive to a reasonable person and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed.

*McCall, supra,* 623 S.W.2d at 888. Ashby argued that the district court erred in granting summary judgment to defendant on the false light claim because the record disclosed the existence of material facts to prove that Hustler acted with reckless disregard as to the falsity of the matters which it published and the resultant false light in which Ashby was placed.

 Defining the circumstances in which a finding of reckless disregard can be supported, the Supreme Court has stated:

> "Reckless disregard," it is true, cannot be fully encompassed in one definition.... reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*St. Amant v. Thompson,* 390 U.S. 727, 730–31, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). In actions governed by an actual malice standard, the trial court must determine if the plaintiff has produced sufficient evidence from which a reasonable jury could find that the plaintiff had demonstrated actual malice with clear and convincing clarity. *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because the plaintiff has failed to meet the burden of proof imposed by the pronouncements of the Supreme Court in *Thompson,* this court concludes that the district court did not err in granting summary judgment to Hustler on the invasion of privacy cause of action.

For the reasons stated above, the judgment of the district court is REVERSED insofar as it granted summary judgment to defendant on plaintiff's libel claim, but AFFIRMED insofar as it granted summary judgment to defendant on plaintiff's invasion of privacy cause of action.