9 F.3d 109
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gregory PECORA, Plaintiff-Appellant,
v.
CELANESE CORPORATION, and Morgan and Company, Inc.,
Defendants-Appellees.
 No. 92-6592.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1993.
 
 Before: MILBURN and GUY, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this diversity case, plaintiff Gregory Pecora appeals the district court's grant of summary judgment in favor of defendants in this products liability action, which plaintiff brought based upon a negligence theory. The district court held that Pecora was contributorily negligent as a matter of law and was, therefore, barred from recovery under a Kentucky statute, K.R.S. Sec. 411.320(3). On appeal, the issue is whether the district court erred in granting summary judgment. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant Celanese Corporation operates a plant in North Carolina that produces polyester polymer. Celanese uses machines called granulators to cut the polyester polymer into small pieces (granules), which it then sells. During the mid-1980s, Celanese replaced its old granulators and sold "as is" most of them to defendant Morgan and Company, Inc., a salvage company located in Shelby, North Carolina. Morgan then sold three of these granulators to Pecora's employer, Pioneer Chemicals, Inc.
 
 
 3
 The granulator consists of a 75-horsepower electric motor which turns a rubber drive belt connected to a spindle. The spindle contains a rotor on which knives are mounted. These knives rotate within a metal cutting chamber, which also contains stationary knives. Plastic material is fed into the cutting chamber where it is granulated by the action of the rotating knives and the stationary knives. Once the plastic pieces have been reduced to a sufficiently small size, they fall through a mesh screen and are sucked away by a vacuum tube. Ordinarily, when the machine is fully assembled, an operator cannot reach into the cutting chamber. However, if the cutting chamber becomes so clogged with plastic that the knives will no longer rotate, it may become necessary to disassemble the granulator to gain access to the cutting chamber.
 
 
 4
 On April 1, 1986, the granulator became clogged. Pecora and a co-worker attempted to unclog the machine using an access port, which Pecora's employer had cut into the upper part of the chamber. Because the two men were unable to clear the chamber from above, they were forced to disassemble the machine to gain access from the area where the screen was located. To disassemble the machine the men had to (1) pull the vacuum system away from the machine, (2) take off the metal plate that covered the screen, and (3) pry the screen away from the hot plastic, which was sticking to the screen from inside the cutting chamber. After gaining access to the cutting chamber, the two men chipped the solidified plastic off the blades with a metal pipe. During the time the two men were unclogging the granulator, they intermittently started the granulator to see if the blades would rotate. Once the blades rotated, they knew the machine was unclogged. The men then turned the granulator off in preparation for reassembling the granulator. As Pecora was attempting to replace the screen over the cutting chamber, his right hand was severed by the knife blades which were freewheeling inside the chamber, i.e., continuing to rotate even though the electric power was shut off. As a result of his injury, the plaintiff's right arm had to be amputated to the mid-portion of his forearm to accommodate a prosthesis.
 
 
 5
 On August 25, 1986, plaintiff Pecora filed this products liability action in the district court. In affidavits, Pecora's engineering expert stated that the granulator had a design defect and contained inadequate warnings. The expert stated that the design of the granulator was defective because it did not contain an electrical interlocking device to prevent electricity from flowing to the machine while the access cover and screen were removed from the cutting chamber. The expert further stated that there was no adequate warning of the danger presented by the blades turning with the access cover removed. The expert stated that one function of a warning is to remind users of known dangers in order to prevent accidents that result from a user's momentary forgetfulness.
 
 
 6
 Plaintiff Pecora's deposition establishes that he had operated Pioneer's granulators for approximately six months before his injury. He had torn them down, set them up, replaced their braids, and maintained them. Pecora had cleared clogs from the cutting chamber several times. He knew that the blades could freewheel and that there was no obstacle between him and the blades when the screen was removed. Pecora was also aware that he could determine whether the blades were turning by examining the drive belt, or by looking into the cutting chamber at the blades themselves. Although Pecora stooped down to look into the cutting chamber on the day he was injured, he could not see the blades because the lighting was too dark. At the time of his injury, Pecora did not examine the drive belt because he was standing on the opposite side of the machine from the drive belt.
 
 
 7
 In December 1990, defendants filed motions for summary judgment based on Pecora's contributory negligence. On February 24, 1992, the district court ordered the case referred to a magistrate. The magistrate made findings of fact and conclusions of law and recommended that defendants' motions for summary judgment be granted because Pecora was contributorily negligent as a matter of law and, therefore, Pecora's action was barred under Kentucky law. On May 20, 1992, third-party defendant Pioneer made a motion for summary judgment. Thereafter, Pecora filed a motion to reconsider the findings of fact due to pleadings that had been missing from the court record. After considering the missing pleadings, the magistrate filed a report stating that no amendment would be made to the prior recommendation. Thereafter, the district court granted defendants' motions for summary judgment. This timely appeal followed.
 
 II.
 
 8
 This court reviews a district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., Inc., 932 F.2d 495, 500 (6th Cir.1991). Likewise, we review a district court's determination of state law de novo. Salve Regina College v. Russell, 499 U.S. 225 (1991).
 
 
 9
 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). This court must view all facts and inferences in the light most favorable to the nonmoving party. Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Although "[s]ummary judgment is rarely appropriate in controversies governed by a negligence standard because the facts and circumstances of each case determine the degree of care by which the defendant's conduct is to be measured," Ashby v. Hustler Magazine, Inc., 802 F.2d 856, 858 (6th Cir.1986), summary judgment may be granted in negligence cases if the requirements of Rule 56 are met, see Sims v. Memphis Processors, Inc., 926 F.2d 524 (6th Cir.1991); Fidelity and Deposit Co. of Maryland v. Bank of Bladenborro, 596 F.2d 632, 635 (4th Cir.1979).
 
 
 10
 Under Kentucky products liability law, contributory negligence bars a plaintiff's recovery regardless of whether a defendant was negligent or the product was defective. The Kentucky Product Liability Act provides in relevant part:
 
 
 11
 In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused the injury or damage to the plaintiff, the defendant shall not be liable, whether or not said defendant was at fault or the product was defective.
 
 
 12
 K.R.S. Sec. 411.320(3). This statute applies to all products liability cases where the injury occurred before 1988, the year the Kentucky legislature adopted comparative fault. Koching v. International Armament Corp., 772 S.W.2d 634 (Ky.1989). Because the statute is clear and unambiguous, it must be applied according to its plain meaning. Reda Pump Co., a Div. of TRW, Inc. v. Finck, 713 S.W.2d 818 (Ky.1986); Anderson v. Black & Decker (U.S.), Inc., 597 F.Supp. 1298 (E.D.Ky.1984).
 
 
 13
 Plaintiff Pecora argues that his alleged contributory negligence, i.e., not determining if the blades were freewheeling before attempting to replace the screen, should not bar his recovery because this activity was the very activity that the missing safety device was designed to guard against. Pecora premises this argument on his engineering expert's affidavit statement that Pecora would not have been injured if the granulator had been equipped with an electrical interlocking device. Pecora argues that at least one court, the New Jersey Supreme Court, has accepted his argument and held that when the alleged negligence of the plaintiff was the eventuality that the missing safety devices were designed to guard against, "the interests of justice dictate that contributory negligence be unavailable as a defense." Bexiga v. Havir Mfg. Corp., 290 A.2d 281, 286 (N.J.1972).
 
 
 14
 In a diversity case such as this, we are bound by Kentucky law. The New Jersey court in Bexiga sought to mitigate the harshness of a common-law contributory negligence rule and based its decision on public policy and justice. However, at the time of plaintiff's injury, contributory negligence in products liability cases was a statutory defense in Kentucky. This court cannot substitute its own notions of public policy and justice for that of the Kentucky legislature. Furthermore, the Kentucky Supreme Court has held that the statute did not merely adopt the state of the common law in negligence cases because the entire tenor of the statute is to restrict and limit product liability actions. Reda Pump, 713 S.W.2d at 820. The statute clearly states that contributory negligence which "was a substantial cause" of the occurrence is a complete defense "whether or not ... defendant was at fault or the product was defective." K.R.S. Sec. 411.320(3). The Kentucky Supreme Court has emphasized that this statute is to be construed in accordance with its plain meaning. Reda Pump, 713 S.W.2d at 819-20. Therefore, this statute will absolutely bar Pecora's recovery if he was contributorily negligent as defined in the statute, regardless of whether the granulator was defective.
 
 
 15
 Under Kentucky law, a plaintiff is contributorily negligent if he does not exercise the degree of care that an ordinarily prudent person would exercise in similar circumstances for his own safety. E.g., Ingersoll-Rand Co. v. Rice, 775 S.W.2d 924 (Ky.Ct.App.1989). The burden of proving contributory negligence is on the defendants. E.g., Howard v. Howard, 607 S.W.2d 119 (Ky.Ct.App.1980).
 
 
 16
 Pecora's deposition testimony is the only evidence in the record relevant to the issue of whether Pecora was contributorily negligent in replacing the screen on the granulator. Pecora stated that it is possible for a person to replace the screen without getting his hands in the area where the blades are because there is about a foot between the blades and the screen opening. Pecora guessed that on the day of the accident, when he pushed the screen up, "it was tilted too far up in the slant to where [his] hand did get caught in [the blades]." J.A. at 55. Pecora stated that he would not have stuck his hand into the cutting chamber if he had known the blades were turning. He was aware that replacing the screen would be a dangerous operation if the knives were freewheeling. J.A. at 51-52. Pecora also knew that the knives could freewheel in the cutting chamber, but on the day of the accident, he did not know they were actually freewheeling.
 
 
 17
 Pecora knew of two ways in which he could determine whether the blades were freewheeling inside the cutting chamber: (1) by stooping down and looking into the cutting chamber through the space from which the screen had been removed, or (2) by walking around the one-ton machine and seeing whether the drive belt was moving.[1] Pecora did take the precaution of stooping down and looking through the screen space, but he "didn't see the blades turning." J.A. at 53. The lighting was so dark in the warehouse that Pecora "couldn't see whether they [the blades] were turning or not." J.A. at 54. From the back of the machine, Pecora could not see the drive belt. Although he could have walked around the machine to see if the drive belt was moving, he did not do so. Even though Pecora could not tell if the blades were moving from looking inside the chamber, he did not take the simple precaution of examining the drive belt. Had he walked around the machine to examine the drive belt, he would have known "right away" that the blades were freewheeling. J.A. 55.
 
 
 18
 On the facts of this case, we conclude that there is no genuine issue of material fact as to whether Pecora was contributorily negligent under the controlling Kentucky statute. If an ordinarily prudent person were dealing with a machine that he knew was capable of cutting off his hand if the machine's blades were turning, he would determine if the blades were turning before placing his hand in a position where it could come in contact with the blades. Pecora could have determined if the blades were turning by simply walking around the machine and looking at the drive belt. He did not do this and therefore did not exercise the care that an ordinarily prudent person would have exercised for his own safety, and we conclude that as a matter of Kentucky law his failure to do so was a substantial cause of his injury.
 
 III.
 
 19
 For the reasons stated, the district court's grant of summary judgment in favor of the defendants is AFFIRMED.
 
 
 
 [1]
 Defendants argue that there was a third way: by standing up and looking through the access port, which had been added to the machine by Pioneer. Pecora did not look through the access port because it was usually covered with a dark tint plexiglass. He would have been able to see the cutting chamber through this port only if the plexiglass were not attached. The record is unclear as to whether the plexiglass was attached at the time of the accident. Because we must resolve any ambiguity in the record in Pecora's favor, we will assume the plexiglass was attached at the time of the accident