Bill BUSHELL, et al., Appellants,

v.

Mary C. DEAN, Appellee.

No. 3–88–090–CV.

Court of Appeals of Texas, Austin.

Nov. 1, 1989.

Rehearing Denied Jan. 10, 1990.

Bill Malone, Jr., Austin, Tim G. Sralla, Fielding, Barrett & Taylor, Fort Worth, for appellants.

Malcolm Greenstein, Greenstein & Kolker, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellee Mary Dean filed suit in Travis County district court against Bill Bushell and the Syndex Corporation, her former manager and employer, claiming assault, sexual harassment, and intentional infliction of mental or emotional distress. Upon trial to a jury, she obtained judgment for damages. This Court will reverse that part of the judgment awarding damages and attorney's fees for sexual harassment and remand that cause for trial.

In 1978 Smith Produce, which is owned by Syndex Corporation, hired Dean as an order clerk. Smith is a produce wholesaler with customers throughout the Austin area. Dean was a dependable, hard-working employee, who took pride in the growth of Smith Produce. Over the years she received raises and eventually a promotion to office manager. As office manager, Dean's duties included hiring, training, and supervising the order clerks.

Bushell had been the Smith Produce general manager when Dean was hired and he was still general manager when Dean became office manager. Bushell was Dean's immediate supervisor in her new position. They had a good work-place relationship.

By 1983, Smith Produce, as a whole, was not doing well financially. The produce business was very competitive and Smith found itself in a price war. Even after the price war ended, Smith was in a difficult financial position. Smith had lost customers during the price war and with fewer orders and deliveries, had too many employees. Syndex pressured Bushell to return Smith to a profitable state. In an effort to comply, Bushell placed all employees under a wage-freeze and he tried to eliminate overtime.

By December 1983,[1] the relationship between Bushell and Dean began to change. He bought cokes for Dean or sometimes paid for her breakfast. Bushell began telling her about a variety of sexual problems he was having with his wife. He tried to rub Dean's neck once, but stopped when she told him to quit. On occasion, he also poked her in the ribs. All of these events occurred between December 1983 and February 1984. Although Bushell testified that he did not believe these things were outside the normal course of his friendship with Dean, she testified that a definite change occurred, of degree if not of kind, in December and that during those months Bushell was paying much more attention to her than he had before.

On a Saturday in mid-February 1984, Bushell called Dean into his office. He told Dean that he was in love with her and requested a sexual liaison with her. Dean said she was flattered but she immediately left the office. The following Monday morning he told her that he knew that his feelings presented a difficult situation and that he probably should not have told her how he felt. Bushell added, however, that he was not sorry that he told her.

The subject did not come up again until about two weeks later when Dean openly rejected Bushell. In fact, she screamed at him, in front of several other employees, that her favors were not for sale. After that occurrence, he treated her much more formally. He did not speak to her except

for work-related topics. Dean believed that thereafter Bushell was more demanding as a supervisor. This tense situation continued for more than a week until Dean approached Bushell one afternoon in mid-March to tell him about the truck drivers' plan to strike in protest of the wage freeze.

Dean did not supervise any of the loading or delivery employees but, because she had fortuitously learned of the plan and because she was worried that a strike would seriously hurt Smith Produce, she went to Bushell with the information. Bushell became angry and began to shout. Among other things, he shouted that he would do all of their jobs, including her job, if that was what it took to keep the company running. Dean responded that he was not going to shout at her and that she quit. She turned away, walked to her desk, and began collecting her belongings. Although Bushell tried to apologize, Dean left with all of her things and she never returned.

On July 11, 1984, Dean filed a complaint with the Austin Human Relations Commission. She asserted in the complaint that she had been the victim of sexual discrimination at Smith Produce. The Austin Commission forwarded the complaint to the Texas Commission on Human Rights. In January 1985, Dean received a letter from the Texas Commission notifying her of her right to file a civil action. Pursuing that suggestion, Dean filed suit against the Syndex Corporation and against Bushell. In her petition she alleged assault, intentional infliction of mental or emotional distress, and sexual harassment. Tex.Rev.Civ.Stat. Ann. art. 5221k, § 5.01 (1987). She obtained a favorable jury determination on each cause and, based on those determinations, the district court rendered judgment awarding $195,600.00 in actual and punitive damages and $123,000.00 in attorney's fees.

■ Syndex attacks the district court's jurisdiction claiming in point of error six that Dean failed to properly file a complaint with the Texas Commission on Hu-

---

**1.** When witnesses gave conflicting testimony regarding the exact date of a particular event, or when the witnesses were uncertain of a date, the facts recited here reflect the general consensus.

man Rights as required by Tex.Rev.Civ. Stat.Ann. art. 5221k, § 6.01(a) (1987).[2] Filing a complaint under § 6.01(a) is a mandatory prerequisite to a sexual harassment suit. Syndex asserts that the discrimination complaint is invalid because it was initially filed with the Austin Commission, which, according to Syndex, had no jurisdiction since Smith Produce was located outside the city limits. Syndex therefore urges that no evidence exists that Dean complied with § 6.01(a). The argument is without merit.

The undisputed evidence is that the Austin Commission forwarded the complaint to the Texas Commission and that the Texas Commission responded to the complaint with a "right to sue" letter. This proof constitutes some evidence that Dean complied with § 6.01(a). Syndex argues that the Texas Commission was the proper agency to deal with Dean's complaint. In fact, that was the agency that acted on her complaint. Also, by sending the letter, the Texas Commission apparently concluded that the filing requirement had been met. In any event, the Austin Commission's assistance in filling out and forwarding the complaint cannot invalidate the Texas Commission's rightful authority. The point is overruled.

By three points of error, Syndex attacks the district court's admission of certain expert testimony. One of the appellee's experts, Dr. Lucia Gilbert, testified regarding the "profile" of a sexual harasser. She testified, among other things, that typically a sexual harasser is male, is married, is the victim's supervisor, and that the harasser has known the victim for at least six months. During other parts of the trial, appellee's counsel presented testimony to prove Dr. Gilbert's profile to be an accurate description of Bushell. In point of error seven, Syndex asserts that Dr. Gilbert's testimony is irrelevant, Tex.R.Evid. Ann. 402 (Supp.1989); in point eight, it

asserts that the probative value of the testimony is substantially outweighed by unfair prejudice, Tex.R.Evid.Ann. 403 (Supp. 1989); and in point nine, it asserts that her testimony is inadmissible character evidence. Tex.R.Evid.Ann. 404 (Supp.1989). We sustain all three points.

■ It is important to recognize the nature of profile testimony. An expert testifies that research reveals certain common "facts" about persons who exhibit a particular behavior, e.g., sexual harassment. The research consists of compiling information on the personalities of an unrelated test group of other persons accused of sexual harassment. The profile, then, necessarily represents the combination of parts of each of the other case files. By tabulating the parts into a profile, the separateness of the individual case file is lost. However, the individual case file, and consequently its parts, is not admissible.

The notion that each dispute should be determined on its own facts is an important component of a fair trial; evidence from other, similar cases is therefore not legally relevant.[3] In particular,

> it would be manifestly unjust to admit [the acts of third persons], since the conduct of one man under certain circumstances ... can never afford a safe criterion by which to judge of the behavior of another man similarly situated....

Taylor, The Law of Evidence § 317 (8th ed. 1887). It has long been Texas law that evidence of similar, third person transactions is not admissible to prove the transaction at issue. *Davis v. Commercial Standard Ins. Co.*, 194 S.W.2d 599, 606 (Tex. Civ.App.1946, writ ref'd n.r.e.); *First State Bank & Trust Co. of Hereford v. Southwestern Engineering & Const. Co.*, 170 S.W. 860 (Tex.Civ.App.1914, no writ) (error to admit evidence of a real estate contract when no party to the lawsuit was involved in the agreement); *Southern Gas & Gasoline Engine Co. v. Adams & Peters*, 169

---

2. This suit was tried on the assumption that art. 5221k creates a private cause of action. We express no opinion on such assumption.

3. As distinguished from logical relevance. Evidence from other situations frequently has logi-

cal relevance. Indeed, one reason such evidence is excluded is that it carries too much logical force, unfair prejudice being the result. See the Rule 403 discussion below.

S.W. 1143 (Tex.Civ.App.1914, writ ref'd) (in suit over defective tractor, it was error to admit evidence regarding the quality of another tractor made by a different company and used on a different farm); *see also Clifton v. State*, 46 Tex.Crim. 18, 79 S.W. 824 (1904) ("[t]he acts and conduct of others cannot be introduced against the accused, unless the accused has been in some way connected with such acts and conduct." *Id.*, 79 S.W. 826).[4]

Similarly, the events upon which the profile is based are acts between third persons and are not relevant. Tabulating parts of those events into a profile cannot make the information relevant.[5] We conclude that the profile testimony was not relevant. Tex.R.Evid.Ann. 401. Because irrelevant evidence is not admissible, Tex.R.Evid.Ann. 402, it was error to admit the profile testimony.

Syndex's next claim, that the profile testimony was inadmissible as being unfairly prejudicial, is governed by Tex.R.Evid.Ann. 403. Evidence is inadmissible under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. . . ." The probative value of the profile testimony is low because it contains no facts about Bushell or about the relationship between Bushell and Dean. The danger of prejudice, confusion, or misleading the jury is high because the profile testimony was presented as expert opinion and because evidence of other, similar situations is highly persuasive by its nature. We are persuaded that the dangers of the profile testimony substantially outweigh its probative value. We conclude the profile testimony should have been excluded under Rule 403.

■ Syndex also argues that the profile testimony was inadmissible character evidence. Tex.R.Evid.Ann. 404. Character evidence in this context depends on the following logic:

(1) sexual harassers have particular personality traits;

(2) the defendant possesses these traits;

(3) therefore, the defendant probably did harass the victim.

This is plainly the reasoning which Dean constructed at trial. Also plain is that Rule 404(a) makes such evidence inadmissible except in narrow situations not applicable here.

The rule against character evidence has been employed by other jurisdictions to exclude profile testimony in child abuse cases. *See, e.g., United States v. Gillespie*, 852 F.2d 475, 479–480 (9th Cir.1988); *State v. Hansen*, 304 Or. 169, 743 P.2d 157, 161 (1987) ("That child abusers use these techniques has no bearing on whether a person who does these things is a child abuser.") We conclude that the profile testimony was inadmissible character evidence.[6]

---

**4.** Many Texas opinions rely on the doctrine of *res inter alios acta* (transactions involving others). That doctrine states that evidence of similar events is not relevant, and therefore not admissible. The doctrine excludes a variety of evidence, most frequently evidence of a transaction between a party and a third person, but also evidence of transactions between third persons. Because the doctrine applies to so many situations, case law has not developed a precise meaning for the Latin term. This imprecision has been interpreted as a lack of substance by noted commentators who have suggested abandoning the term altogether. 22 Wright & Graham, Federal Practice and Procedure § 5170 at 114 (1978).

However, a handful of Texas opinions, including some of those cited, do provide a useful rule: evidence of a similar event can only be admissible when a party to the lawsuit (or his agent, servant, etc.) participated in the similar event.

**5.** Other jurisdictions have dealt directly with the admissibility of profile testimony in the context of child abuse prosecutions. The testimony was excluded for a variety of reasons including irrelevance. *See, e.g., Sloan v. State*, 70 Md.App. 630, 522 A.2d 1364, *cert. denied*, 310 Md. 276, 528 A.2d 1287 (1987) (error to admit testimony of "classic indicators" of a child abuser, such evidence being irrelevant to whether instant defendant is guilty).

**6.** The special evidentiary problem of proving the defendant's character through the actions of others has occurred frequently enough to justify a general rule: "the character of third persons (not parties to the cause) has no probative value and is, of course, inadmissible." McCormick and Ray, Texas Law of Evidence § 676 (1937).

■ Having found error, we now examine whether the error was harmful. Tex.R. App.P.Ann. 81(b)(1) (Supp.1989). Dean testified to a simple sequence of events which forms the basis for her sexual harassment claim. Bushell denied only a few of Dean's statements; his testimony, however, painted a very different picture. While both participated in each event, Dean remembers them as harassment but Bushell recalls them either as neutral or as acts of affection. The testimony goes back and forth in this fashion for several hundred pages. In the midst of these highly disputed nuances, the record contains some simple, undisputed testimony[7] from an expert, Dr. Gilbert. Her testimony plainly defines who is a sexual harasser.

Because the proof of harassment was so evenly divided, we conclude that the cogent expert testimony was particularly likely to have been persuasive to the jury. Because we conclude that the error in admitting the profile testimony was harmful, we sustain Syndex's points of error seven, eight, and nine.[8]

■ Bushell has three points of error which mirror Syndex's points. No basis exists for Bushell to assert these evidentiary points. Syndex was Dean's employer and only the employer is liable under art. 5221k, § 5.01. The district court judgment accurately reflects § 5.01; damages flowing from the sexual harassment cause were adjudged against Syndex alone. Because there is no judgment against him in the sexual harassment cause from which he may appeal, Bushell's points of error six, seven, and eight are overruled.

Bushell's points of error three and four raise legal and factual insufficiency attacks against the evidence supporting Dean's claim of intentional infliction of mental or emotional distress. To determine the legal sufficiency of the evidence, a reviewing court examines only the evidence which supports the judgment. *Renfro Drug Co.*

*v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 613 (1950). To determine the factual sufficiency of the evidence, the reviewing court considers all of the evidence; the evidence is not factually sufficient when the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ Texas law recognizes the tort of intentional infliction of mental distress. *Silcott v. Oglesby,* 721 S.W.2d 290, 292 (Tex.1986); *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 944 (Tex.App.1985, writ ref'd n.r.e.). This tort has four elements:

(1) the defendant acted intentionally or recklessly,

(2) the conduct was "extreme and outrageous,"

(3) the actions of the defendant caused the plaintiff mental distress, and

(4) the mental distress suffered was severe.

*Tidelands,* 699 S.W.2d at 942.

The district court's charge incorporates these elements while submitting the question in terms of "emotional distress." In answer to question five, the jury determined that Bushell intentionally inflicted severe emotional distress upon Dean.

Bushell's strongest evidentiary challenge regards the proof of the outrageousness of his conduct. In his brief, Bushell acknowledges committing some acts toward Dean. Although he views these acts in a different light, they are some evidence of outrageous conduct. Bushell's point of error three is overruled.

Turning to the factual sufficiency point, the record reveals that the following events occurred during an approximately four month period, December 1983 to March 1984. Bushell occasionally bought small things for Dean such as breakfast or a

---

**7.** It is not significant that the defendants could have hired their own expert to dispute Dr. Gilbert's conclusions. We are concerned here only with the harm of what actually happened at trial.

**8.** Because Rules 403 and 404 usually exclude otherwise admissible evidence, our determination that those rules apply to Dr. Gilbert's testimony is an alternate to our decision that under Rule 401 the evidence is not relevant.

softdrink. He paid attention to her in other ways, also, like calling her "My Sweet Mary." He told off-color jokes and spoke about his marital problems of a sexual nature to Dean, but also did the same in the presence of other employees or even groups of employees. Bushell made a comment once that he liked Dean's slit skirt; he also remarked about the shape of her body.

Bushell touched Dean several times. In December, when she hugged Bushell to thank him for a favor, Dean claimed that Bushell tried to kiss her. In January, Bushell rubbed Dean's neck although she did not ask him to rub it and he did not offer before he did so. Dean quickly told him to stop, which he did. During February and March there were two or three times when Bushell poked Dean in the ribs.

Bushell told Dean that he loved her and desired a sexual encounter. Later, at two separate times, he again raised the subject of his love for her and his desire for sexual relations. Dean did not respond openly to Bushell's attention until he claimed to be in love. Before that time she ignored the attention or tried to avoid Bushell altogether. When he first expressed his romantic feelings, she responded that she was flattered but then she left the room. She testified that when she next saw Bushell she felt he did not understand that she did not want his attention. She did not speak to him about this misunderstanding; instead, she continued to ignore or avoid the situation until about two weeks later.

At that time, she publicly and vigorously spurned him which caused him to act much differently. Bushell became more formal. He stopped calling her "Mary"; instead, he addressed her as "Mrs. Dean." Bushell did not speak to her except about business matters. He became much more demanding—expecting Dean to complete her duties more quickly and thoroughly. Also, he assigned new duties to her including some of his own duties.

Bushell testified that during this time he realized that indeed he loved his wife and not Dean. He claimed that he told Dean about this realization. According to Dean,

she endured almost two weeks of Bushell's retaliation before their confrontation over the truckers' strike. She quit her job during that fight.

Bushell's actions were vulgar and unseemly; the question, however, is whether from a consideration of all of the evidence the jury's determination that Bushell's conduct toward Dean was outrageous is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660.

Certainly, expressing one's feelings, however sincere, can create a claim for intentional infliction of mental or emotional distress, but only when the expression is outrageous. *See Kramer v. Downey*, 680 S.W.2d 524 (Tex.App.1984, writ ref'd n.r.e.) (woman tails her ex-lover daily for several years); *see also Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984) (non-personal example of outrageous conduct). In general, liability exists "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Prosser and Keeton, Torts § 12 at 60 (5th ed.1984).

■ As previously explained, Bushell denied only a few of Dean's statements depicting his conduct toward her. While each party participated in each event, Bushell recalls them as neutral or as acts of affection while Dean viewed them as humiliating and embarrassing. The fact finder, the jury in this instance, is the judge of the credibility of the witnesses and the weight to be accorded their testimony. *Harrell v. Sunylan Co.*, 128 Tex. 460, 97 S.W.2d 686, 689 (1936). Bearing that principle in mind, this Court has considered all of the evidence, much of which has been detailed throughout this opinion, and has concluded that the jury's determination that Bushell's conduct was outrageous is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Bushell's point of error four is overruled.

■ We turn to Syndex's points of error four and five which challenge the legal and

factual sufficiency of the evidence proving that Bushell's actions were within the course and scope of his employment. An employer is liable for the action of an employee when the act is within the employee's general authority and when the act furthers the object for which the employee was hired. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971).

When Dean rejected him, Bushell retaliated by assigning her more work and by becoming more demanding as a supervisor. Assigning more work was within Bushell's authority. Supervising employees more closely furthers the object for which Bushell was hired. We conclude some evidence exists that Bushell acted within the course and scope of his position as general manager. *Renfro Drug*, 235 S.W.2d at 613. Syndex's point of error four is overruled.

The jury could well have concluded that many of the acts which occurred before Dean rejected Bushell were within his authority. It is not unheard of for a supervisor to buy a softdrink for an employee. At trial, the reason Bushell advanced for trying to massage Dean's neck was that she looked tired from all her work; the unspoken implication was that he was concerned about the welfare of an employee. Certainly, the comments about his marriage were not work related, but the off-color jokes and other comments could be viewed by the jury as within the manager's scope of authority. Appellants themselves introduced evidence that vulgar language and off-color jokes were common at Smith Produce. A manager is expected to communicate with workers. If the work environment includes off-color jokes, then the jury might consider such a joke during work hours as a way for the manager to gain the employees' confidence. To this proof we must add the evidence of the events after the public rejection which were clearly within Bushell's authority. We conclude that the jury's determination that Bushell acted within the course and scope of general manager is not so against the great weight of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d

660. Syndex's point of error five is overruled.

We reverse that part of the judgment awarding damages and attorney's fees for the statutory sexual harassment claim. We remand for new trial the cause of action for statutory sexual harassment. In all other respects, the judgment is affirmed.