**DIAMOND SHAMROCK REFINING AND MARKETING COMPANY, Appellant,**

v.

**Roque MENDEZ, Appellee.**

**No. 04–90–00025–CV.**

Court of Appeals of Texas, San Antonio.

March 20, 1991.

Rehearing Denied May 3, 1991.

**516**

Karen A. Angelini, Brock & Mathis, W. Wendell Hall, Fullbright & Jaworski, San Antonio, for appellant.

Ruben R. Pena, Michael E. Hearn, Jones, Galligan, Key & Pena, Weslaco, Jo Chris G. Lopez, Shaddox, Compere, Walraven & Good, San Antonio, for appellee.

Before CADENA, C.J.[1], and CHAPA and CARR, JJ.

## OPINION

CARR, Justice.

Roque Mendez was terminated from his job with Diamond Shamrock Refining and Marketing Company for allegedly stealing a handful of nails. He sued Diamond Shamrock and went to the jury on two theories: that Diamond Shamrock had invaded his privacy by placing him before the public in a false light, and that Diamond Shamrock's extreme and outrageous conduct intentionally or recklessly caused him severe emotional distress. Based on favorable jury findings, Mendez was awarded a judgment from which Diamond Shamrock brings this appeal.

The Diamond Shamrock refinery at which Mendez had worked for over ten years is located in Three Rivers, a town of about 2500 people. Diamond Shamrock is the largest employer there. At the time of his discharge, Mendez was one of four chief operators at the plant.

The events culminating in his discharge occurred just before the end of the night shift on September 4, 1985. Mendez was ordered by his supervisor to clean up debris which had been left in his work area for over two weeks by maintenance personnel. This debris included loose nails discarded by carpenters working at the site. Mendez complied with the clean up order he had been given, but he was upset at what he

perceived as rudeness on the part of his supervisor and the arbitrariness of the requirement that he pick up after other employees. He gathered up several loose nails, threw them in a small box, threw the box in his lunch bag, and set the bag on a shelf in the control room. He finished cleaning up the area and then went to the clock house to punch out for the day. The clock house is located on refinery property. He left work, leaving the lunch bag containing the nails on the table in the clock house where they were found by a company security guard later that morning. The nails were worth no more than $5.00.

Once at home, Mendez received a phone call from Wayne Billings, the personnel manager at the refinery. Billings asked him to return to the refinery. Upon his return, Mendez met with Billings and John Hoffman, the plant manager. Billings asked Mendez to identify the lunch bag, and Mendez indicated it was his. They asked him to explain. Mendez told them of the call he had received from the supervisor and explained that it had made him angry. He told Billings and Hoffman how he had put the nails in his lunch bag. He said he should have thrown the nails away because that is what he and the other employees had done with the other things they had had to clean up. Mendez testified that he told Billings and Hoffman that he did not intend to steal the nails. Following this explanation, Hoffman stood up and said it looked to him as if Mendez was stealing company property, and he asked if Mendez agreed. Mendez said he guessed so. Hoffman immediately terminated him and left the room. Billings asked Mendez why he had not come to him, as he could have issued Mendez a "gate pass" to take the nails off company property. Mendez replied that he did not know; he guessed he "just messed up."

There had been a series of small thefts at the refinery during the months prior to Mendez' termination, however, no one else at the refinery had been fired for stealing. The Diamond Shamrock employee hand-

1. Carlos C. Cadena, Chief Justice (Retired), not participating.

book provided that an employee could be terminated for stealing company property.

Diamond Shamrock argues in its first point of error that there was no evidence or insufficient evidence that it had invaded Mendez' privacy by giving publicity to a matter concerning him that placed him before the public in a false light. Its first argument under this point is that it did not place Mendez in a false light; its second argument is that it did not publicize the matter.

■ In reviewing a "no evidence" or legal insufficiency point of error, we consider only the evidence and inferences which support the challenged finding of the trier of fact, and we disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). The point must be sustained when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; and (4) the evidence establishes conclusively the opposite of the vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990). In considering a factual insufficiency point, we consider and weigh all the evidence supporting and contrary to the challenged finding. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We set aside the finding only if the evidence is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re King's Estate*, 244 S.W.2d at 661.

■ The tort of "false light publicity" is recognized in Texas. *See, e.g., Covington v. Houston Post*, 743 S.W.2d 345 (Tex.App. —Houston [14th Dist.] 1987, no writ); *Gill v. Snow*, 644 S.W.2d 222 (Tex.App.—Fort Worth 1982, no writ); *Moore v. Big Picture Co.*, 828 F.2d 270 (5th Cir.1987). Its

elements are delineated in RESTATE-MENT (SECOND) OF TORTS § 652E (1977):

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Diamond Shamrock contends that Mendez was stealing company property. Consequently, it argues that any statement that he was discharged for stealing, being true, could not have placed him in a false light. As evidence, Diamond Shamrock relies on the fact that Mendez agreed when it was suggested to him by Hoffman that he was stealing.

■ To prevail in a false light claim, statements must have been published about the plaintiff that are false, *Gill*, 644 S.W.2d at 224, or are at least capable of conveying a false impression about the plaintiff, *Braun v. Flynt*, 726 F.2d 245, 253 (5th Cir.), *cert. denied sub nom., Chic Magazine, Inc. v. Braun*, 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984).

■ The jury was instructed that theft occurs when a person, "without the owner's consent, appropriates property with the intent to deprive the owner of said property." *See* TEX.PENAL CODE ANN. § 31.03 (Vernon 1989 and Supp.1991). Mendez testified that he did not intend to steal the nails and that he did not tell anyone that he intended to steal them. When asked why he agreed with Hoffman's assessment that he was stealing, Mendez indicated that he was intimidated by the supervisors. He testified that the supervisors were always telling the employees "how everything was. And it got to a point to where you either agreed with them or, if you didn't, you were going to get fired anyway." He also testified that

when he made the admission, he was unaware of the true definition of stealing. Billings testified that Mendez said he intended to steal the nails. Hoffman did not remember Mendez saying that, but he said that it was his impression from the whole conversation that Mendez intended to steal the nails.

Viewing only the evidence and inferences in favor of the jury finding, we conclude that there was evidence of probative force in support of the finding. *In re King's Estate*, 244 S.W.2d at 661. Viewing all the evidence, we cannot say that the evidence in support of the jury's finding is so weak as to render the finding clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176. Moreover, we may not substitute our judgment for that of the jury. *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex.1989). The jury was entitled to believe Mendez' testimony.

■ Diamond Shamrock's second argument under its first point is that the evidence is legally and factually insufficient to support the jury's finding that it publicized the accusation of theft. Section 652E of the Restatement does not define "publicity." Comment a of section 652E refers instead to the definition at section 652D:[2]

> "Publicity," ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

RESTATEMENT (SECOND) OF TORTS § 652D comment a (1977). Widespread publicity is required. *Moore*, 828 F.2d at 274.

Knowledge of Mendez' termination became disseminated throughout the Three Rivers community. Diamond Shamrock contends that there was no evidence that it was responsible for publicizing the information to the public at large. Billings, however, told his supervisors of Mendez' termination. These were people who had

to know in order that Mendez' position would be filled and his duties discharged. Billings testified that the supervisors would have had to tell some of their employees, such as the operators. Clayson Royal, a chief operator, testified that Billings told him of Mendez' termination later that morning. He further testified that Billings did not use the word "steal" and that he could not remember exactly the words used, but he was under the clear impression that Mendez was terminated for stealing. Royal testified that the story of the nails in Mendez' lunch bag in the clock house was "all over the plant."

Mendez left the plant immediately after being fired without talking to anyone. He went to his parents' home and told his sister and his father that he had been fired. He told his wife that night when she came home from work. During the weeks following his termination, Mendez spoke to 100 to 125 employees about being fired. Some of them already knew he had been fired for stealing and some did not. His wife also testified that some people in Three Rivers and in nearby George West knew Mendez had been terminated for stealing, and that she told some herself. She spoke to 50 or 75 people. Neither Mendez nor his wife could name a person from the refinery who had said that he had been terminated for stealing, although his wife added that she knew few people at the refinery.

The facts that Mendez left the plant without talking to anyone immediately after being fired, and that the story of the nails in his lunch bag was all over the plant later that morning, support the jury's conclusion that the refinery management publicized the matter "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." There was no one else who could have disseminated the story so rapidly. In fact, there was no one else who knew the story. Mendez had left the plant

---

**2.** The Restatement actually refers to section 652C, comment a, which speaks only of an individual's proprietary interest in the exclusive use of his name or likeness. This typographical error was corrected in RESTATEMENT (SECOND) OF TORTS, Appendix §§ 588 to 707A (1989) at 362.

without talking to anyone and had gone to his parents' home where he told only his father and his sister. His sister testified that she spoke to no one other than her family about it; his father, however, was not called as a witness. Once the matter was publicized to the refinery's employees, it was not unreasonable to expect it to become common knowledge within the small community of Three Rivers. Hoffman admitted he was not surprised the reason Mendez was fired got out into the Three Rivers community. While there was evidence that Mendez and his wife told some people in the community the reason he was terminated, there were also people who approached them who already knew the story. We conclude that the evidence was sufficient to support the jury's finding.

■■■■ Diamond Shamrock argues that if it did publicize the termination, it was only publicized to employees having a common interest in the publicized matter, thus giving rise to a qualified privilege excusing the publication and requiring plaintiff to prove actual malice to overcome the privilege. Diamond Shamrock's argument must fail because it did not plead the qualified privilege. It went to trial on its first amended original answer. It raised qualified privilege as an affirmative defense, but only to Mendez' libel and slander causes of action. Qualified privilege was not raised as an affirmative defense to the false light theory. The defense as to the false light theory is thus waived. *Little v. Bryce,* 733 S.W.2d 937, 938 (Tex.App.— Houston [1st Dist.] 1987, no writ). Further, Diamond Shamrock failed to request a jury question regarding this affirmative defense. A defendant is required to obtain jury findings on every essential element of its affirmative defense, or the defense is waived. *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (1949). Diamond Shamrock's first point of error is overruled.

In its second point of error, Diamond Shamrock argues that the court erred in failing to submit a jury question inquiring whether it had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Mendez would be placed. It argues in its third point that even if the question had been submitted, there was no evidence or insufficient evidence that Diamond Shamrock had knowledge or acted in reckless disregard. Mendez argues that Diamond Shamrock failed to preserve the error of which it complains.

The jury question presenting the false light theory reads:

> Did the Defendant, Diamond Shamrock, by and through its employees, invade the privacy of the Plaintiff, Roque Mendez?
>
> You are instructed that the Defendant may invade the privacy of the Plaintiff if it publicized matters which placed him in a false light before the public that would be highly offensive to a reasonable person.
>
> Answer "Yes" or "No."
>
> ANSWER: __Yes__

The standard of care set out in clause (b) of Restatement section 652E is the "actual malice" standard first enunciated in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a defamation case. Under this standard, there can be no recovery without a showing that the defendant has publicized the matter in question with knowledge that the matter is false, or with reckless disregard of whether it is false. The Court later applied this standard to a false light privacy action in *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). *Hill* involved a statutory privacy action brought by a private individual who was involved in a matter of public interest. The Court noted that the question of whether the same standard should be applicable both to persons voluntarily and involuntarily thrust into the public limelight was not before it. 385 U.S. at 391, 87 S.Ct. at 543.

The law of defamation was substantially revised in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). That opinion left unaltered the showing of actual malice required for public officials and public figures to recover for defamation. Respecting private plain-

tiffs, however, the Court held that the individual states may define for themselves the appropriate standard of liability, so long as they do not impose liability without fault. 418 U.S. at 347, 94 S.Ct. at 3010. In *Gertz,* the plaintiff was neither a public official nor a public figure. Therefore, his inability to prove actual malice did not impair his cause of action. He was required to prove only fault and actual injury.

Some six months after the *Gertz* decision, the Supreme Court decided *Cantrell v. Forest City Pub. Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), a false light case. *Cantrell* involved a magazine article concerning plaintiffs who were private individuals. The trial court had instructed the jury that liability could be imposed only if it found that the false statements in the magazine article had been made with knowledge of their falsity or in reckless disregard of the truth. No objection was made to this instruction by any of the parties. Consequently, the Court noted that *Cantrell* presented no occasion to consider whether a state could constitutionally apply a more relaxed standard for a publisher of false statements injurious to a private individual under the false light theory of invasion of privacy. 419 U.S. at 250–51, 95 S.Ct. at 469–70.

The Restatement recognizes this lack of a clear standard with a caveat. RESTATEMENT (SECOND) OF TORTS § 652E caveat and comment d (1977). Comment d notes that in light of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), it is possible that liability may be based on a showing of negligence as to truth or falsity, rather than the stricter "knowledge/reckless disregard" standard set out in clause (b) of section 652E. This leaves open the possibility that the knowledge/reckless disregard standard would apply in false light cases when the plaintiff is a public official or a public fig-

ure, and the negligence standard will apply to other plaintiffs. Comment d at 399.

Our supreme court has adopted the negligence standard for defamation cases. In *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819 (Tex.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977), it held that:

> a private individual may recover damages from a publisher or broadcaster of a defamatory falsehood as compensation for actual injury upon a showing that the publisher or broadcaster knew or should have known that the defamatory statement was false.

The standard of care in Texas false light cases has not yet been resolved by our state courts.[3] However, the Fifth Circuit Court of Appeals has considered this question in *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985), and in *Braun v. Flynt,* 726 F.2d 245 (5th Cir.), *cert. denied sub nom., Chic Magazine, Inc. v. Braun,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984). In *Braun* it was held that a publisher was not entitled to the protection of the actual malice standard in a suit by a private individual. 726 F.2d at 250. In *Wood* the court concluded that a Texas court would apply no different standard of care to a false light claim than it would to a defamation action. 736 F.2d at 1091. It held that *Gertz* applies equally to false light and defamation cases and that Texas courts would impose liability for actual damages on publishers who negligently place private figures in an offensive false light. *Id.* at 1092. We agree with the *Wood* court's assessment and hold that in false light cases involving private plaintiffs the standard enunciated in *Foster* will apply. There is no question that Mendez is a private individual. There-

---

**3.** Texas cases quote section 652E of the Restatement, including its paragraph (b), but they have not reached the issue of the proper standard of care. In *Covington,* the issues were whether the plaintiff had pleaded a cause of action for false light invasion of privacy, and whether the one or two year statute of limitations applied. 743 S.W.2d at 347–48. In *Gill,* the court held that

the evidence did not support a false light cause of action because no false statements of fact were publicized. 644 S.W.2d at 224. In *Moore,* the decision turned on the lack of evidence that the defendant publicized the statements made about the plaintiff at a private meeting. 828 F.2d at 275.

fore, the negligence standard of care should have been included in the instruction accompanying the first jury question. The issue we must now address is whether Diamond Shamrock has preserved this error.

Diamond Shamrock objected below to the omission of the actual malice standard from the charge. It argues that its objection properly preserved the error because the issue of whether it had knowledge that the matter was false or acted in reckless disregard of its falsity is an essential element of Mendez' cause of action. An objection is sufficient to preserve the error of the court's failure to submit a jury question relied upon by the opposing party. *Lyles v. Texas Employers' Ins. Ass'n*, 405 S.W.2d 725, 727 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.); TEX.R.CIV.P. 278. Mendez contends, however, that Diamond Shamrock's actual complaint is that an *instruction* has been omitted from question number one. A complaint regarding an omitted instruction is waived unless the complaining party requests *and* tenders a substantially correct instruction in writing. *Woods v. Crane Carrier Co.*, 693 S.W.2d 377, 379 (Tex.1985); TEX.R.CIV.P. 278. Because Diamond Shamrock did not tender a correct instruction, Mendez argues that it has waived its complaint.

In our view, Diamond Shamrock's complaint indeed relates to an instruction rather than a question. The complaint, however, is not that the instruction is missing, but that it is defective. An explanatory instruction was given concerning the elements necessary to establish an invasion of privacy by placing the plaintiff in a false light. But the instruction was defective because one of the necessary elements was omitted. In such a case the defect may properly be called to the court's attention by an objection without requesting a substantially correct instruction in writing. *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444, 449–50 (Tex.1967); *Yellow Cab and Baggage Co. v. Green*, 154 Tex. 330, 277 S.W.2d 92, 93 (1955); *Sutter v. Hendricks*, 575 S.W.2d 308, 310 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.).

To preserve error, the objection must distinctly point out the alleged error or deficiency in the instruction. *Cosgrove v. Grimes*, 774 S.W.2d 662, 666 (Tex.1989); TEX.R.CIV.P. 274. An objection is not distinct unless the defect relied upon and the grounds of the objection are stated specifically enough to support the conclusion that the trial court was fully cognizant of the ground of the complaint and deliberately chose to overrule it. *Citizens State Bank of Dickinson v. Bowles*, 663 S.W.2d 845, 850 (Tex.App.—Houston [14th Dist.] 1983, writ dism'd). Diamond Shamrock's objection was that the question was "insufficient ... because ... an essential element of a finding by a jury of an invasion of privacy, under the theory of placing one in false light, there—it must be proved, pled and proved that the defendant must have knowledge or have acted in reckless disregard of the falsity of the publicized matter." This objection was overruled.

While the objection was sufficient to preserve the type of error complained of, it did not distinctly point out the actual deficiency in the instruction. It was not error to omit the actual malice instruction, but it *was* error to omit the negligence standard from the instruction. Because this is not the error Diamond Shamrock complained of in its objection, it has not preserved the error. *See Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 608–09 (Tex.1964) (defensive issue in suit on insurance policy submitted erroneous standard by asking whether insured knew or should have known of falsity of statement in insurance application; correct standard was actual knowledge; defect was waived by failure to object). Its second and third points are overruled.

Diamond Shamrock argues in its fifth point of error that there is no evidence or insufficient evidence to support the jury finding that it intentionally or recklessly caused Mendez severe emotional distress.

Texas law recognizes the tort of intentional infliction of emotional distress. *Bushell v. Dean*, 781 S.W.2d 652, 657 (Tex. App.—Austin 1989), *rev'd on other*

*grounds,* 803 S.W.2d 711 (Tex.1990); *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 944 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). *See* RESTATEMENT (SECOND) OF TORTS § 46 (1965). Its elements are: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. *Bushell,* 781 S.W.2d at 657; *Tidelands,* 699 S.W.2d at 942.

■ We believe the element missing from Mendez' proof is that of intent or recklessness on the part of Diamond Shamrock. The Restatement indicates:

> The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly ... in deliberate disregard of a high degree of probability that the emotional distress will follow.

RESTATEMENT (SECOND) OF TORTS § 46 comment i (1965). In our discussion of the first point of error, we noted that the jury could reasonably have concluded from all the evidence that Mendez did not intend to steal the nails. However, at the meeting with Mendez, Billings and Hoffman were entitled to conclude from Mendez' admission that he intended to steal the nails. The fact that Hoffman fired him in the belief that he was stealing does not evidence intention or recklessness on Diamond Shamrock's part. A certain degree of emotional distress will naturally accompany losing a job. We turn to another comment from the Restatement:

> The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

RESTATEMENT (SECOND) OF TORTS § 46 comment g (1965). The termination of an at-will employee for admitted theft is a permissible exercise of a legal right and will not support an action for intentional infliction of emotional distress. *See Novosel v. Sears, Roebuck & Co.,* 495 F.Supp. 344, 347 (E.D.Mich.1980). The fifth point of error is sustained.

Diamond Shamrock's remaining points of error raise objections to the damages question. They are premised, however, on the argument that the trial court committed reversible error by arbitrarily prohibiting Diamond Shamrock from presenting those objections prior to submission of the charge to the jury. Diamond Shamrock raises those objections here for the first time. At the charge conference, the following exchange occurred:

MR. FULLER: All right. On Question No. 3, Your Honor, on these damage elements, the loss of wages in the past and the loss of wages or wage-earning capacity in the future, Judge, are elements—

THE COURT: Let me save you some time. I have got them broken up because I'm not sure which damages we can or should use if it becomes a question. If it becomes a question, you can argue at that time for the purpose of judgment. As you know, now we lump them into one sum before and one lump sum after under the new pattern jury charges, but I have kept them separated on purpose and I'll consider objections to it in case we need to after the verdict.

MR. FULLER: Okay. Is it—so that the record is clear, Judge, it's my understanding that the Court is instructing me that it will not entertain any objections to the damage issues at this time, prior to the submission of this Court?

THE COURT: I'll overrule your objections to the damage question at this time without prejudice to you.

MR. FULLER: Okay. Whatever those objections may be.

THE COURT: That's correct.

MR. FULLER: All right, Judge....

Our rules of civil procedure are specific regarding objections to the charge:

> [O]bjections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. All objections not so presented shall be considered as waived.

TEX.R.CIV.P. 272.

> A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.

TEX.R.CIV.P. 274. Diamond Shamrock seeks to blame the trial court for its failure to make its objections to the damages issue. A similar argument was made in *Vick v. George*, 696 S.W.2d 160 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). There, the appellant argued he was wrongfully denied the right to present orally his objections to the charge. The trial court in that case denied the appellant's attorney the opportunity to dictate his "multiple" objections into the record but permitted him to submit them in writing. No written objections were submitted, and this court held that the objections were waived. *Id.* at 162. Diamond Shamrock would distinguish *Vick* on the ground that there the court allowed the appellant the opportunity to submit objections in writing, but in this case it did not. However, it is not the trial court's burden to see that error is preserved. Diamond Shamrock did not object to being cut off by the trial court. It did not ask to be allowed to submit its objections in writing. It did not tender written objections or ask for time to prepare such objections. In short, it did nothing to preserve its objections to the damages question. When it was cut off, its attorney's only replies were, "Okay" and "All right." ▮ Diamond Shamrock argues that it should be allowed to raise its objections on appeal because the court's ruling was "without prejudice." It appears from the trial court's statements that it was overruling Diamond Shamrock's objections prior to submission, but that it would allow those objections to be made after the verdict. Objections must be made prior to the reading of the charge, or they are waived. TEX.R.CIV.P. 272. Agreements to the contrary between courts and counsel are unavailing. *Missouri Pac. R.R. Co. v. Cross,* 501 S.W.2d 868, 872–73 (Tex.1973). Objections not made prior to submission are waived and cannot be raised for the first time after verdict. *Id.* at 873; *Vick,* 696 S.W.2d at 162. The fact that the trial court indicated its ruling was without prejudice will not abrogate these established rules.

Diamond Shamrock waived its objections to the damages issue. Its points of error four, and six through nine are overruled.

Although we have sustained Diamond Shamrock's point of error relating to intentional infliction of emotional distress, we overruled its first three points of error relating to the false light cause of action. The trial court's judgment did not distinguish between these independent causes of action or make separate awards based on each. It merely incorporated the charge by reference and recited that the jury's verdict was for Mendez. The trial court's judgment may be affirmed on either cause of action; therefore, the fact that we have sustained Diamond Shamrock's point of error relating to emotional distress will not require reversal of the judgment. *See UNL Inc. v. Oak Hills Photo Finishing, Inc.,* 733 S.W.2d 402, 406 (Tex.App.—San Antonio 1987, no writ); *Booker v. Baker,* 306 S.W.2d 767, 775 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.). The judgment of the trial court is affirmed.